UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

JULIE BULLOCK,

    Plaintiff,

    v.

BOARD OF TRUSTEES OF SOUTHERN
ILLINOIS UNIVERSITY SCHOOL OF LAW;
CHRISTOPHER BEHAN, individually and in
his official capacity as Dean; and CYNTHIA
FOUNTAINE, individually and in her individual
capacity as Dean,

    Defendants.

Civil Action No.: _____

**COMPLAINT**
**(Jury Demanded)**

## INTRODUCTION

COMES NOW, Plaintiff JULIE BULLOCK ("Plaintiff" or "Ms. Bullock"), by and through her undersigned attorneys, and hereby complains and alleges against the above-named Defendants, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

Ms. Bullock seeks relief to remedy violations of her substantive due process rights secured by the Fourteenth Amendment of the United States Constitution and contractual rights by Defendants BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY SCHOOL OF LAW ("SIU" or the "School"), CHRISTOPHER BEHAN ("Behan"), and CYNTHIA FOUNTAINE ("Fountaine," collectively, with SIU and Behan, the "Defendants") in relation to those rights. Ms. Bullock was the target of patently defective plagiarism allegations while she was a student SIU's law school. During negotiations with SIU to sort out the allegations, SIU used a series of deceitful promises most akin to bait and switch to convince Ms. Bullock to settle

without a hearing, thereby setting her up for certain academic dismissal. Following her expulsion, Ms. Bullock voiced her objections personally and in writing to the Defendants, to no avail. Accordingly, she now petitions this Court for redress in the form of injunctive relief, damages, costs and reasonable attorney's fees in relation to the violation of those rights, as well as damages for breach of contract pursuant to Illinois common law.

## PARTIES

1.   Plaintiff, JULIE BULLOCK, is a female American citizen who, at all times relevant herein, was a citizen of the state of Illinois and a student at Southern Illinois University School of Law located in Illinois.

2.   Defendant, BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY, operates the Southern Illinois University School of Law, a public educational institution located in Carbondale, Illinois. Defendant receives financial assistance from the United States Government.

3.   Defendant CHRISTOPHER BEHAN, is the Dean of SIU School of Law. He is being sued individually and in his official capacity as the dean.

4.   Defendant CYNTHIA FOUNTAINE is the Dean of SIU School of Law. She is being sued individually and in his official capacity as the dean.

5.   At all times herein, Defendants have been acting under color of law.

6.   At all times relevant hereto, and in all their actions described herein, Defendants' actions took place in the State of Illinois, County of Jackson.

7.   Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that its conduct violated well established and settled law.

## VENUE & JURISDICTION

8.     This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. § 1331 (question of federal law) based upon 28 U.S.C. § 1343 (civil rights) as the claims are based upon 42 U.S.C. § 1983.

9.     Supplemental jurisdiction over Ms. Bullock's pendant state law claims are proper pursuant to 28 U.S.C. § 1367(a), as there exist claims arising out of the same transaction and occurrence as her federal claims.

10.     Venue in this jurisdiction is proper pursuant to 28 U.S.C. § 1391(b), as Defendant is located in this District and the events giving rise to Ms. Bullock's claims occurred therein.

11.     Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

## GENERAL FACTUAL ALLEGATIONS

12.     Ms. Bullock matriculated to SIU's School of Law in Fall 2013.  She was on track to graduate mid-year during the 2016-2017 year.  She currently has 13 credits remaining.

13.     In enrolling in SIU and during the course of her enrollment, Ms. Bullock and SIU entered into several contracts via school publications and individual agreements defining both the student's and the school's expectations and obligations for academics, discipline, and miscellaneous elements of university administered programs.  The relevant contracts include: Southern Illinois University Carbondale Student Conduct Code ("SIU Code"), Rules of the Southern Illinois University School of Law Academic Year 2013-2014 ("Rules"), Southern Illinois University School of Law Honor Code ("Honor Code"), and individualized Probation

agreement, Agreed Disposition No. 1 and Agreed Disposition No. 2015-02, pertinent parts not limited to:

a.      The grant of contractual property rights: "The Student Conduct Code is the primary document governing SIU student conduct and sets forth the rights afforded to, and responsibilities incumbent upon, each student at the university" (SIU Code 1.3) and promises, "The university has a responsibility to provide its members with those privileges, opportunities, and protections that encourage and maintain an environment which supports educational development" (SIU Code 1.5.1).

b.      The parameters of credits/points awarded in Article III 1 and specifics related to Academic Good Standing, Probation and Dismissal in Article III 2 of the Rules.

c.      The procedures for filing a student grievance of grades under Rules Article III 3 (g).

d.      The definitions, degrees, and procedures for Law Students in the Honor Code violations under Honor Code Article II and Article III.

14.     During her time in the program, Ms. Bullock remained in compliance academically and financially in conformance with contractual expectations. While she struggled with grades initially, she was working her way out of academic probation during the proscribed time set by the school and successfully completed all the terms of remediation with student success coordinator Professor Johnson, earning a 3.2 semester GPA for the Fall 2014 term. She was on an equally successful path in Spring 2015.

15.    Ms. Bullock served as the president of SIU's Women Law Forum and was actively engaged in the law student group for parents. In early 2015, she earned a competitive externship with the States Attorney's office and obtained her 711 license. She also earned a place in the study abroad program and spent a summer in Australia where she earned an A in her 3 credit course.

**Administrative Academic Irregularities**

16.    Despite Ms. Bullock's positive influence and overall success on campus, a series of inadvertent academic irregularities marred her otherwise stellar career trajectory.

17.    At the end of her first year, Ms. Bullock was put on academic probation for her overall GPA. Though she did not have to sign a formal probation agreement, she was asked to meet with Academic Success Coordinator Professor Johnson weekly and develop study plans for success in the following terms. After completing the school's requested remediation and lifting her GPA, the school no longer required weekly meetings and close scrutiny of her grades.

18.    During the Fall 2014 term while enrolled in a lawyering skills class, Ms. Bullock faced a plagiarism allegation. She digitally submitted a classmate's paper to the online drop box after mistakenly clicking a similar file name while uploading her assignment. Upon contact by the professor, Ms. Bullock and the other student recognized and explained the error. Pursuant to an informal agreement disposition and in order avoid a formal hearing and reach an expeditious resolution on the allegations, Ms. Bullock accepted a 0 for the assignment.

19.    Even after the 0 on the assignment, Ms. Bullock should have earned a passing grade in the class based on the remainder of her work; instead, the instructor miscalculated her grade leaving her with 0.1 points for the credits for that course. Nonetheless, her semester GPA was 3.2 and cumulative was 2.463.

20.     Ms. Bullock contacted Dean Behan about the grade miscalculation on April 14, 2014. In response, Dean Behan superficially verified the grade with the instructor, but did not initiate an investigation to otherwise determine whether the grade was correct.

21.     During Spring 2015 while enrolled in a lawyering skills class, Ms. Bullock faced a second plagiarism allegation. After requests from the Professor Anderson to turn a rough draft of her work, Ms. Bullock submitted a very rough draft with the emphatic caveat that her sources were not properly cited and parts of the paper were incomplete, with sections of text from her sources copied and pasted in as space holders. Despite informing the professor that her draft was incomplete and not ready for review, the Professor Anderson read the draft and decided the copy-and-paste rough portions constituted plagiarism.

22.     Ms. Bullock was contacted by the Honor Code ethics investigator John Erbes on April 16, 2015 about her rough draft. In the letter, Professor Erbes explained "An allegation of misconduct has been filed with me by your professor in Disability Law, Law 600 for the Spring 2015 semester. The faculty member has asked that I look into a possible incident of plagiarism for the written research paper you submitted in Disability Law this Spring."

23.     Ms. Bullock immediately emailed Professor Anderson, who rationalized her decision to initiate a complaint stating "The paper you turned in did not merely have some incomplete citations, which is what I understood you to be concerned about."

**Ethics Inquiry Irregularities**

24.     Following Professor Erbes' email, Ms. Bullock approached the Deans about the email.

25. In the initial email, the School did not indicate the degree of violation the charge. Ms. Bullock learned the charge constituted a second or third degree sanction when she soon thereafter met with Dean Fountaine and Dean Behan, who conveyed the news verbally.

26. The actual relevant portion of the Honor Code read:

a. Academic Misconduct in the Second Degree Article II B1c: "Submits plagiarized work in any course, competition, Law Journal activity, or Moot Court brief with the purpose of representing as the student's own work that of another."

Sanctions include: "a grade of 0.0 in the course and either permanent separation from the School of Law or suspension from the School of Law for two regular (fall and spring) academic semesters"

b. Academic Misconduct in the Third Degree Article II C1g: "Submits plagiarized work in any course, competition, Law Journal activity, or Moot Court brief"

Sanctions include: "a grade of 0.0 in the course and either suspension from the School of Law for not less than one, nor more than two, regular (fall and spring) semesters or a written reprimand."

c. Permanent Separation Article II K: "If a student is permanently separated from the School of Law, the student shall immediately be dismissed from classes and not permitted to enroll in any further classes in the School of Law unless and until the student reapplies for admission in

the same manner as any other prospective student. It is anticipated that such student will generally not be readmitted; however, if the student is readmitted, all academic credit for previous work completed will be forfeited, and the student must retake all previous required courses. If any student who is permanently separated from the School of Law seeks admission elsewhere, the Registrar shall inform any other law school to which the student seeks admission of the circumstances of the student's dismissal from the School of Law."

27.    Without referencing the Honor Code sanctions directly, Deans Behan and Fountaine told Ms. Bullock that she had two options. One was to choose a hearing. If she chose that option, he informed her that the School would consider the charge a second degree misconduct violation, and she would risk probable expulsion. If she chose to forgo a hearing, the School would consider the charge a third degree misconduct violation, and she would be suspended but eligible for automatic readmission. Ms. Bullock did not indicate what option she preferred, but stressed that any option that avoided dismissal was preferable.

28.    After meeting with the Deans, a plagiarism inquiry was commenced and Ms. Bullock was formally charged with violating the second degree charge "the provisions of Article II, Section B, 1(c) of the Southern Illinois University School of Law Honor Code, in that on or about April 6, 2015, she with the purpose of gaining an academic benefit for herself and with the purpose of representing as her own work that of another, submitted plagiarized work, a significant portion of the work of another, in submitting a draft of her Research Paper in Disability Law, Law 600, for the Spring 2015 semester."

29.     Ms. Bullock decided to avail herself of faculty counsel Professor William Schroeder to understand the process and her options. Professor Schroeder was sympathetic of Ms. Bullock's side and told Ms. Bullock that "the school is trying to make an example of you."

## The SIU Deans Bait and Switch

30.     Ms. Bullock contested then, and still contests now that her ungraded draft constitutes plagiarism. Ms. Bullock asserts that she did not seek to benefit academically by the submission of an unfinished draft but was trying to comply with Professor Anderson's requests.

31.     But upon Professor Schroeder's advice and upon firm verbal directives from Deans Behan and Fountaine that she was likely to be permanently separated from the school if she chose a hearing, Ms. Bullock grudgingly conceded to settle the plagiarism accusation informally.

32.     During negotiations, Ms. Bullock made it clear to Dean Behan, Dean Fountaine, and Professor Schroeder that avoiding permanent separation was her most important consideration. She was repeatedly assured that by choosing to negotiate rather than going through formal hearings, she would not face expulsion in conjunction with this charge.

33.     With Professor Schroeder acting as her counsel, Professor Erbes sent Professor Schroeder a proposed agreed disposition on May 18, 2015. The terms of the agreement included a 0 for the course in question as well as a two semester suspension.

34.     Before signing the draft, Ms. Bullock questioned whether her readmission was automatic following the two semesters; in an email, Professor Schroeder verified that Professor Erbs and the Deans confirmed that was correct.

35.     Nearly as soon as Ms. Bullock accepted the terms of the agreed disposition and prior to the publication of Spring 2015 grades, Ms. Bullock received notification from the Illinois Bar that her 711 license was being revoked based on the school's notification that she was no longer a student.  In conjunction with this revocation, Ms. Bullock's States Attorney externship was also revoked.

36.     Ms. Bullock then received notification on June 10, 2015, that she was being permanently separated from the school for her GPA.

37.     Upon further inquiry, she discovered that by accepting the terms of the agreed disposition, her GPA dropped below the minimum accepted level of 2.3 and, pursuant to Rule III.2 (b)(ii) of the School of Law Rules for Academic Year 2014-15, she was no longer an SIU School of Law student.

38.     Devastated, Ms. Bullock immediately contacted Professor Schroeder, who was unsurprised by the outcome.  Though he was her designated counsel and representative, he did not advise her of the virtual guarantee of permanent separation pending acceptance of the agreed disposition and indicated he realized, and thought she knew, what was going to happen.

39.     Ms. Bullock then contacted Dean Behan, who told her that her permanent separation was final and unappealable.   He also indicated that he was unsurprised by the outcome even though it was related to the plagiarism charge and agreed disposition.

40.     Dean Behan advised Ms. Bullock that pursuant to permanent separation rules, she could apply for new enrollment as a first year law student and pay to take all her classes over.

He also told her that the school would tell any other transferring schools about the status of her standing at the school, thereby likely precluding her from going to a different law school.

41.   Despite receiving notice of permanent separation, the School did not immediately dismiss her from her then-current classes. Ms. Bullock had already been accepted to, and paid in full for, a study abroad summer semester law class, which she completed as planned. Though the school did not attempt to prevent her enrollment and attendance or offer to reimburse her tuition, the school did not award credit for the course despite her high earned mark. She paid for and took the class but received no academic benefit.

42.   Ms. Bullock has continued to participate in several law school cross-listed classes as a Masters student at SIU and has consistently earned high grades. If her newly-earned grades were calculated into her cumulative GPA, she would be well within the parameters of academic compliance. Moreover, if Ms. Bullock's class grade in Lawyering Skills were properly calculated, she would have been well within the parameters of academic compliance even after the agreed disposition and would not have faced permanent separation to begin with.

43.   Ms. Bullock is currently 13 credits short of graduation requirements. The School has refused to consider her for readmission or even entertain her substantial remediation efforts. Nonetheless, the school has continued to accept Ms. Bullock's full tuition payments yet has refused to give her the credit she repeatedly earns.

## FIRST CAUSE OF ACTION
**[Against Defendant SIU and Against Defendant Behan and Fountaine in their official capacities]**

*CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (DENIAL OF SUBSTANTIVE DUE PROCESS)*

44.   Each of the allegations set forth in paragraphs 1 through 43, inclusive, are hereby incorporated by this reference as if realleged fully herein.

45.    All persons residing in the United States are protected by the Substantive Due Process through the Fourteenth Amendment.

46.    Substantive Due Process protections of the Fourteenth Amendment bars the government from taking arbitrary action that results in the deprivation of a person's interest without reasonable justification.

47.    That Ms. Bullock, through her contracts with SIU, had a constitutionally protected property interest in her continued enrollment in her law school education at SIU.  She further invested a significant amount of money into paying for the education that she completed, strengthening her claim to the interest.

48.    That upon her contracts with SIU Ms. Bullock is afforded rights under the Fourteenth Amendment's Substantive Due Process to ensure that this Court may override a post-secondary public university's academic decision where the school's actions were such a substantial departure from accepted academic norms as to demonstrate that they did not actually exercise professional judgment when stripping her of that protected property interest.

49.    That when viewed against the background of Ms. Bullock's entire career at the school, Defendant SIU's arbitrary and capricious expulsion of Ms. Bullock after Defendant Behan and Defendant Fountaine's actions in setting Ms. Bullock up to fall prey to the "bait and switch" tactic was an extreme departure from academic norms and had no rational academic basis.

   a.    Ms. Bullock and SIU had entered into several preceding agreements and arrangements during her enrollment, in which both parties performed both rationally and professionally without discord.  Defendant SIU cannot claim Ms. Bullock would have acted differently here.

b. In this case, SIU could- and should- have allowed Ms. Bullock's hearing progress organically, where SIU's academic ruling and sanctions on the basis of her academic conduct would have been supported by court deference to academic decisions.

c. Instead, SIU accepted Defendant Behan and Fountaine's use of trickery and misstatements to induce Ms. Bullock to agree to informal resolution and the May 2016 agreed disposition, knowing that her agreement would artificially lower Ms. Bullock's grade point average to permit SIU to dismiss her without process or appeal.

d. SIU's acceptance and actions to expel Ms. Bullock in conjunction with Defendants Behan and Fountaine's trickery was arbitrary, unreasonable, and not rationally related to any legitimate educational interest. School policies and contracts permitted substantial recourse for SIU to sanction Ms. Bullock fairly, openly, and with appropriate safeguards. That SIU chose to rely on deceitful means to achieve certain ends is not justified and constitutes arbitrary, capricious, and irrational professional judgment.

50. That Defendant SIU's subsequent treatment of Ms. Bullock following her permanent separation demonstrates its decision to permanently separate Ms. Bullock was not related to a rational educational purpose of removing an academically deficient student. SIU continued to accept Ms. Bullock's tuition for, and continued to offer Ms. Bullock participation in, SIU classes.

a.     Despite Ms. Bullock's supposed academic deficiencies, SIU did not restrict Ms. Bullock's completion of study abroad credit hours in Summer 2016, which was prepaid. In this class, she contributed to SIU School of Law students' discussions earned a grade of S, as passing grade.

b.     Despite Ms. Bullock's supposed academic deficiencies, SIU has not restricted Ms. Bullock's completion of several law classes as an enrolled graduate student at SIU. In these classes, she contributed to SIU School of Law students' discussions and earned grades of 4.0, 3.0, 4.0, 3.0, and 3.0.

c.     SIU has also told Ms. Bullock that the multiple counts of plagiarism on her record will prevent her enrollment at any other law school. Despite Ms. Bullock's supposed academic deficiencies, however, Defendants have suggested they would allow Ms. Bullock to re-enroll as a 1L to retake all classes she has previously passed, if she is willing to pay.

51.    As a result of Defendants' official policies, acts, omissions, and practices, Ms. Bullock was improperly dismissed on the sole basis of her artificially deflated grades.

52.    As a result of Defendants' official policies, acts, omissions, and practices, Ms. Bullock has suffered irreparable harm because she was deprived of her contractual rights to be free from arbitrary, capricious abuse perpetrated by state actors acting on behalf of the state.

53.    As a proximate result of the illegal, arbitrary and capricious acts of Defendants, Ms. Bullock has suffered academically, financially, and emotionally.

54. Defendants' actions and omissions proximately caused Ms. Bullock to suffer, and she continues to suffer, humiliation, severe emotional distress, loss of professional reputation, and permanent professional damage.

55. The acts, conduct, and behavior of Defendants have denied Ms. Bullock her substantive due process rights, by reason of which Ms. Bullock is entitled to injunctive relief of immediate re-enrollment as a student of SIU School of Law, to correct further suffering.

56. It has been necessary for the Ms. Bullock to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

//

///

## SECOND CAUSE OF ACTION
[Against Defendants Behan and Fountaine in their Individual Capacities]

### *CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983*
*(DENIAL OF SUBSTANTIVE DUE PROCESS)*

57. Each of the allegations set forth in paragraphs 1 through 56, inclusive, are hereby incorporated by this reference as if realleged fully herein.

58. That Defendants Behan and Fountaine, in their individual capacities, intentionally violated Ms. Bullock's constitutional rights under the Fourteenth Amendment. Defendants Behan and Fountaine knew that their actions in the conduct of perpetuating a deceitful bait and switch to expel Ms. Bullock denied Ms. Bullock of her constitutional right to substantive due process and therefore exceeded the authority granted to them in their official capacities as representatives of SIU, and thus, are individually and personally liable for any damages incurred by Ms. Bullock.

a. That Defendant Behan knowingly, arbitrarily, and capriciously gave false and misleading information to Ms. Bullock, artificially deflating her grade in an attempt to improperly dismiss her without any rational basis.

b. That Defendant Fountaine ratified Behan's acts by omitting pertinent details to correct Dean Behan's misleading statements in an attempt to improperly dismiss her without any rational basis.

59.    That Defendants Behan and Fountaine acted under color of law in violating the Fourteenth Amendment, as described herein in violation of 42 U.S.C. § 1983.

60.    As a result of Defendant Behan and Fountaine's acts, omissions, and practices, Ms. Bullock was improperly dismissed on the sole basis of her artificially deflated grades. Individual Defendants Behan and Fountain, under the color of law, violated Ms. Bullock's right to substantive due process by exercising their power without reasonable justification.

61.    As a result of Defendant Behan and Fountaine's individual, acts, omissions, and practices, Ms. Bullock has suffered irreparable harm because she was deprived of her contractual rights to be free from arbitrary, capricious abuse perpetrated by state actors acting on behalf of the state.

62.    As a proximate result of the illegal, arbitrary and capricious acts of Defendants Behan and Fountaine, Ms. Bullock has suffered academically, financially, and emotionally.

63.    Defendants Behan and Fountaine's actions and omissions proximately caused Ms. Bullock to suffer, and she continues to suffer, humiliation, severe emotional distress, loss of professional reputation, and permanent professional damage.

64.    The acts, conduct and behavior of each of the individual Defendants Behan and Fountaine in acting to deny Ms. Bullock of her substantive due process rights were performed

knowingly, intentionally, oppressively, and maliciously, by reason of which Ms. Bullock is entitled to compensatory and punitive damages against Defendants in their individual capacities in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

65.    It has been necessary for the Ms. Bullock to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## THIRD CAUSE OF ACTION
**[Against SIU, Behan, and Fountaine in their Official Capacity and Against Defendants Behan and Fountaine in their Individual Capacity]**

*CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983*
*(EQUAL PROTECTION)*

66.    Each of the allegations set forth in paragraphs 1 through 65, inclusive, are hereby incorporated by this reference as if realleged fully herein.

67.    All persons residing in the United States are protected by the Equal Protection Clause of the Fourteenth Amendment which bars the government from intentional discrimination including "class of one" discrimination, when the intentional discriminatory treatment lacks any rational basis and there was improper motive.

68.    That Ms. Bullock, by facing a plagiarism charge in April 2015, was singled out and discriminated against compared to similarly situated individuals.

a.    Ms. Bullock knows of two students who committed similar questionable acts while she was enrolled that turned in and were reported for alleged plagiarism but which Defendant chose not to formalize charges.

b.    Since Ms. Bullock has been separated from the School, at least one more student has avoided charges for committing much more

heinous plagiarism, including turning in another student's paper word-for-word as his own. In that case, Defendant did not initiate formal charges following the report, allegedly so that the student would not get in trouble.

69.     That by choosing to prosecute Ms. Bullock for a reported plagiarism allegation, Defendant SIU treated Ms. Bullock differently than those similarly situated law students subject to the same Honor Code rules.

70.     That Defendants Behand and Fountaine, in their individual capacities, intentionally violated Ms. Bullock's constitutional rights under the Fourteenth Amendment. Defendants Behan and Fountaine both individually knew that their actions in choosing to charge Ms. Bullock with plagiarism denied Ms. Bullock of her constitutional right to equal protection and therefore exceeded the authority granted to them in their official capacities as representatives of SIU, and thus, are individually and personally liable for any damages incurred by Ms. Bullock.

a.   That the actions of Defendants Behan and Fountaine were the result of personal animus against Ms. Bullock, and said actions and denials were taken without any rational basis.

b.   In fact, Professor Schrodinger intimated that Defendant Behan and Fountaine were merely "making an example" of Ms. Bullock in choosing to prosecute.

c.   That Ms. Bullock's unfortunate past academic blemishes were a factor in choosing to prosecute this individual allegation of misconduct is clear. Professor Erbes' email to Ms. Bullock said, "Regrettably, I have been asked to initiate a new ethics investigation against you," indicating that Ms. Bullock's old ethics

investigation played a role in the Defendant's decision to charge. Such a consideration is not warranted by Honor Code.

71. That by reason of the aforesaid actions, Defendants official and individual actions exhibit deliberate indifference and/or reckless disregard for the constitutional rights of Ms. Bullock and other similarly situated students, all in violation of her constitutional rights.

72. As a result of Defendant SIU's actions and Defendant Behan and Fountaine's official actions, Ms. Bullock suffered and continues to suffer a deprivation of her rights, privileges, and immunities secured to her by the Fourteenth Amendment, and thus is entitled to injunctive relief from Defendant SIU.

73. As a result of Defendant Behan and Fountaine's individual actions, Ms. Bullock suffered and continues to suffer a deprivation of her rights, privileges, and immunities secured to her by the Fourteenth Amendment, and thus is entitled to an award of monetary damages from them in their individual capacities in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS.

74. The acts, conduct and behavior of each of the individual Defendants Behan and Fountaine were performed knowingly, intentionally, oppressively, and maliciously, by reason of which Ms. Bullock is entitled to punitive damages against Defendant Behan and Fountaine in their individual capacities in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

75. It has been necessary for Ms. Bullock to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

**FOURTH CAUSE OF ACTION**
[Against Defendant SIU]

*BREACH OF CONTRACT*

76.    Each of the allegations set forth in paragraphs 1 through 75, inclusive, are hereby incorporated by this reference as if realleged fully herein.

77.    Courts in Illinois and the Seventh Circuit impose a contract on the relationship between students and universities. Materials actually provided to students, including enrollment agreements and catalogs, may become part of the agreement.

78.    Ms. Bullock had expressed and implied contracts with Defendant SIU in connection with rights explicitly guaranteed by the various School materials, including Southern Illinois University Carbondale Student Conduct Code ("SIU Code"), Rules of the Southern Illinois University School of Law Academic Year 2013-2014 ("Rules"), Southern Illinois University School of Law Honor Code ("Honor Code"), and individualized Probation agreement, Agreed Disposition No. 1 and Agreed Disposition No. 2015-02.

79.    Ms. Bullock dutifully complied with the mandates of the contractual materials governing her relationship with Defendant SIU.

80.    In contrast, Defendant SIU's treatment of Ms. Bullock's purported plagiarism violation was extreme and out of scope with its contractual promises. Specifically, Defendant SIU breached its promise in the SIU Code "to provide its members with those privileges, opportunities, and protections that encourage and maintain an environment which supports educational development" when SIU agent Defendants Behan and Fountaine used deceitful statements and interfered with traditional negotiating to derail traditional Honor Code Article III E Agreed Disposition and Sanction Rules, which provides, "If the Examiner has filed a complaint, the Examiner may initiate discussions with the accused student or, if the student is

represented, with the student's representative, for the purpose of reaching an agreed disposition of the charge" and is only approved and imposed by the Dean.

    a.      Specifically, when Defendant Behan and Defendant Fountaine verbally contemplated and decided upon the degree of misconduct implicated in the charge against Ms. Bullock, they impermissibly interfered with Ms. Bullock's right to discuss and reach a fair agreed disposition of charges with Ethics Examiner Professor Erbes.

    b.      Defendants misled Ms. Bullock into believing that choosing agreed disposition was less risky than choosing a hearing, but only offered – and approved – the agreed disposition knowing full and well that Ms. Bullock's grades would plummet and she would be dismissed from the program with certainty.

    c.      Defendant SIU's revocation of Ms. Bullock's 711 license prior to publication of her final grades demonstrate agents knew of the ultimate implication of the agreed disposition, but misled Ms. Bullock anyway.

    d.      Such an intentional outcome falls short of providing "protections that encourage and maintain an environment which supports educational development" with respect to Ms. Bullock's contractual rights.

    81.     Defendant Behan's refusal to initiate a grade grievance inquiry following Ms. Bullock's appropriate request that her Lawyering Skills grade was arbitrarily awarded and not in conformance with the points she received in the class violates Rules Article III 2(g), which provides:

a.      "If the Associate Dean determines that the student's written grievance creates a reasonable suspicion that the faculty member awarded the grade as a result of prejudice or arbitrary and capricious conduct, the Associate Dean shall refer the matter to the Academic Standards Committee (the "Committee").

b.      Here, Ms. Bullock created a reasonable suspicion by presenting evidence in writing that her raw score was miscalculated based on the points she earned in the class. Rather than investigating her evidence and providing Ms. Bullock with contrary evidence that the grade was indeed properly calculated, Defendant Behan dismissed her grievance entirely after simply asking the professor. Ms. Bullock's complaint was not provided appropriate review in line with Rules requirement.

c.      Had Ms. Bullock's Lawyering Skills grade been computed correctly, her cumulative GPA would have remained within the standards set forth in her Probation Agreement and she would not have faced automatic expulsion.

82.     As a proximate result of the illegal, arbitrary and capricious breaches by Defendant SIU, Ms. Bullock has suffered academically, financially, and emotionally.

83.     Defendant SIU's actions and omissions proximately caused Ms. Bullock to suffer, and she continues to suffer, humiliation, severe emotional distress, loss of professional reputation, and permanent professional damage.

84.    But for Defendant SIU's illegal breaches, Ms. Bullock would remain in good standing at SIU School of Law. Accordingly, Ms. Bullock demands injunctive relief to reinstate her status as an active student.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Bullock demands a jury trial for all issues in this matter.

## RELIEF REQUESTED

WHEREFORE, Ms. Bullock prays that this Honorable Court enter judgment in her favor, and against the Defendants:  (a) for Injunctive Relief to reinstate Ms. Bullock to a student in good standing; (b) for compensatory damages from the individual Defendants in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial; (c) for punitive damages against the individual Defendants in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial; (d) for interest; (e) together with the costs and disbursements of this action and such other attorneys' fees, pursuant to 42 U.S.C. § 1988; and (d) further relief as justice requires.

DATED this 3rd day of January, 2017.

**DREW & DREW, P.C.**

By:  _____
DREW & DREW, P.C.
BRYAN A. DREW
IL ARDC # 06271184
905 West Washington Street
Benton, IL 62812
Telephone:  (618) 439-9406
Facsimile:  (618) 435-3441

JASON J. BACH, ESQ.
THE BACH LAW FIRM, LLC
7881 W. Charleston Blvd, Suite 165

Las Vegas, NV 89117
Telephone:  (702) 925-8787
Facsimile:  (702) 925-8788
*Attorneys for Plaintiff*